Your Honors, may it please the Court, my name is Brent Blakely. I'm an attorney for Laura Heinemann, who is the defendant, appellant, and cross appellant. We have cross appeals. He can go first and then you can address your process. Thank you, Your Honor. Today, for my opening, I'm going to concentrate on two central issues of this case. The first being, obviously, the jury instructions, which is the retaliation. That's really the heart of your claim, right? That really is it, Your Honor. And everything else compounds upon it, the exclusion of evidence. But really, it's most emblematic in this kind of catch-all, hybrid retaliation instruction that Judge Reel gave in this case. This is not a situation where our claims are not well-defined. We didn't know what the elements were. This case has already been up in front of this Court once. The claims are clearly defined. There are four separate and distinct claims that Ms. Heinemann is bringing. Retaliation in violation of Title VII, retaliation in violation of the Fair Employment and Housing Act, wrongful termination in violation of California law, and also a claim under California's Whistleblower Protection Act. These four claims, although they all are retaliation claims, they all have separate and distinct elements under federal law, under state common law, and under state statutory law. Most importantly, the California Whistleblower Act, which is in Labor Code Section 1102.5, which is the toughest act in the country regarding whistleblower claims. So let me just ask. One thing I understand what the district court did, and you wanted separate instructions for each of the substantive claims. And the district court said, well, at the bottom, they're basically all the same. Retaliation is the key issue. And sort of constructed this composite instruction. One thing I didn't get out of your brief is why it was wrong with respect to any particular claim. Certainly are. Because it added elements and it added mixed motive language without talking about the burdens. Well, one of the things it did was the judge used motivating factor throughout. Correct. Which seemed to be beneficial for you. And as I understand mixed motive, it's really a defense. And that's how this thing came about, and I think it's fairly clear from the transcript, is computer associates offered their instruction. We had all of this mixed motive language, but without the burden shifting. And so, and again, they've never conceded during trial that this was not a mixed motive case. In fact, the big issue is. It should be a defense. The phrase is defense, and the employer asks for the mixed motive instruction. And they were asking for it essentially, but without the shifting burdens. If you look at the most, if you look at the whistleblower. Okay. Let's just take the whistleblower statute. Just tell me why. It wasn't in your brief. I couldn't get this out of your brief. Let's just say you had a whistleblower claim with nothing else. That was your claim? Yes, Your Honor. This is the instruction that the judge gave. All right. Why was it legally erroneous? Because it added requirements, hurdles, and elements that are not in the whistleblower claim. And if you look at, on page 31 of my brief, but I can just go. So the judge said, well, let's just say this is a whistleblower claim, and that's your only claim, and here's the instruction the judge gives. And here's, here are the elements, and this is from, directly from the statute and directly from case law. That the employee engaged in a protected activity, that her employer subjected her to an adverse employment action, two. And the third element, there's only three, that there is a causal link between the two. Those are the only elements. So here the judge said, Ms. Hyneman filed the complaint or cooperated with the government in an investigation in good faith. C.A. retaliated against Ms. Hyneman. Ms. Hyneman's complaint to the government action with the government's investigation was a motivating factor. Ms. Hyneman was proximately harmed. C.A.'s retaliatory conduct was a substantial factor in causing Ms. Hyneman's harm. And then it has the additional language at the bottom. Why is that? I don't quite understand why it's legally incorrect. Well, the reason it's legally incorrect is the first three elements, Your Honor, are that she filed a complaint. The first three elements are basically track it and it's fine. You know, it's not a motivating factor with regard to the whistleblower case. It's a causal link. There's a link between the two of them. But where the district court added in the non-retaliatory reason language at the bottom is basically the court's then saying, that she must prove that her employment was terminated because she filed the claims. Well, no, that's a higher standard. It's, was there a causal link between the two? So the court right there is making this apply to a higher standard. Then the next thing is, if you find that Ms. Hyneman's employment was terminated for a reason other than her cooperation with the government, such as some later event that occurred between the date she filed and the charge of her termination, Ms. Hyneman cannot recover on that basis. That is a non-retaliatory defense. They are, Computer Associates is offering a non-retaliatory reason for Ms. Hyneman's termination, and the court made it an element of her claim. And whereas the labor code makes it very clear that if you're going to do that, and I'll quote right from the code, once, once Hyneman is, demonstrates by a preponderance of the evidence, those other three elements, not, not this non-retaliatory element that Computer Associates is trying to bring in, i.e. that the protected activity was a contributing factor, contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons. So what, basically what the, what the court did is it threw this non-retaliatory requirement into Hyneman's cause of action, made it an element. The jury is looking at this and going, okay, this is an element. And it doesn't even properly instruct the jury that this, this is a burden on Computer Associates. And it's a clear and convincing burden. Hyneman only, if, if the proper instruction, if they weren't going to raise this defense, would have been those three elements. And it was error and a misstatement of the law and, and clear error for, for the district court to basically throw this non-retaliatory language into the jury instruction and then follow it up with three other jury instructions, which basically make the same argument and word it a different way. That was Computer Associates Instructions 32, 34, and 36, I believe. While at the same time, you know, while at the same time excluding our temporal proximity instruction, our instruction regarding failure to conduct an investigation. I mean, it, it, I was reading again Computer Associates' brief, and a statement they made with regard to the temporal proximity instructions. I, I could have, I should have written that. It's basically that, you know, by giving the instruction, it would have, they're arguing that it would have prejudiced and just shown a biased view of the case by the judge. Well, what the judge did is exactly that to us. By, by adding these additional requirements into the whistleblower claim. And again, the whistleblower claim is not a Title VII claim. It's not a fair employment housing claim. California has the toughest whistleblower act in the country. It's the, it, it's the easiest one in the country for whistleblowers to prove. And to lump in all these other requirements that, that were pulled from sexual harassment, good faith, you know, all these different requirements in, in this non-retaliatory language into these jury instructions was clearly error. And, and that tracked along with the, with the, with the California, excuse me, fair employment housing claim. Excuse me. Can I get a water? Yes. Please. It's, it's not like I made these instructions up. I pulled them right out of CACI. I pulled them right out of the codes. I mean, word for word from case law. I did not alter them except with when they were, Computer Associates was trying to introduce this, this non-retaliatory reason language. I said, all right, if you're going to do that, you need, you need to put in the elements. You know, that they properly assert it. In other words, here are the burdens. Otherwise, for instance, with the, you know, there, there should have been no modification to CACI at all. It should have been one, two, three, four, five. And there's no reason why it was modified. I mean, the judge actually made a statement in the, in the transcript, which is like basically said that DFEH and the EEOC are out of it. Just made it, you know, right at the, he just, I guess, summarily dismissed those claims. Yet at the same time, he was incorporating elements from the, you know, case law. I mean, it was, it is very clear what was going on here. I've, I've had dual appeals in front of this district court before in botched trials where, you know, the summer judgment was reversed and then we went to trial and then that was, you know, and then we ended up again in front of the Ninth Circuit before finally, you know. Well, okay, if you, apart from your whistleblower claim, this instruction, this composite instruction pretty much tracks the retaliation claim for Title VII and. But again, Your Honor, like, for instance, with California, the CACI instruction 2505. You mean CalJEC? Excuse me? You mean the, when you say CACI, you mean the California jury and. Right, yes, Your Honor. Civil jury instruction. Right. 2505, there are five elements to a claim for retaliation under the Fair Employment and Housing Act. And that's clearly spelled out. What the district court did is, again, add this non-retaliatory language without talking about the burdens. And again, it was, and this was on the earlier appeal. It's in the, our whole argument in the earlier appeal is that, all right, so Heinemann goes to the FBI and goes to the Security Exchange Commission, gets subpoenaed for all these documents, then files an EEOC and DFEH claim. That gets served on computer associates. A month later, she's gone. It's a trumped-up termination. In other words, like, all right, we've got to get her computer, we've got to get her laptop to find out what she's given to law enforcement, and we need to get her out of here before she can cause any more harm. And they've tried to, you know, make this independent source argument, which is the Reeves case, which was cited in our other brief, which is the cat's paw case. It's basically that you've got Grace Kaden acting as an instrumentality. In other words, she goes, well, given what I've looked at, all right, it appears to be forgery. And then management goes, all right, we need to terminate her right now. That's what we're telling you to do. And Grace Kaden may or may not have known about what was going on as far as the security exchange violations, but she was acting as an instrumentality in the final decision for Brian Urquhart, the general counsel, for her supervisor, whose brother was under indictment. And again, if you look at, and this goes on. So was it your claim that Computer Associates manufactured the alleged forgery? Yes, it is, Your Honor. I mean, why would Lori Heineman, a month after going to the FBI and the Security Exchange Commission, and she's actively cooperating, providing the information, and she's now filed claims that she's being retaliated against already by Computer Associates for ---- And it wasn't on her computer? Excuse me, Your Honor? It wasn't on her computer? The information she gave to the government? Yeah. It was. Okay. She, that was the whole, and that goes into, and that's in her brief. Yes. Yeah. I mean, she provided her computer and everything. And that's why the whole focus was when they fight her on the spot, they, like, follow her to her house and get her laptop. Get that. Her employer provided a laptop. Right. The employer's laptop. It was her work laptop. She worked on the employer's laptop, right? I'm trying to remember. She had her, she had a laptop that was assigned to them, assigned to her from the employer that went, the hard disk. There were two laptops, Your Honor. One, something went wrong with that computer. She had all the data transferred to her personal, her own personal that she paid with her own money. Right. And she was using that at the time she was terminated. And they went to get that. My understanding was they went to get the one that they assigned to her. I think it was, I think they went to get, she said no, her laptop. The one that had all of the company information on it. I mean, that was, that's why they followed her to her house. They wanted to know, I mean, they could get, computer associates didn't care less about a broken, you know, laptop that was basically, I mean, it's a computer company. Following up on that, the certification that was made on delivery was made by the lawyer. It wasn't made by the client, right? I apologize, Your Honor. She never certified that she had returned everything to the company. The lawyers for her did it. She testified, I believe she testified at trial. No. Did she ever, in writing, sign any document that said every document that I have that was generated in company business has been returned and there are no copies made? That's what she was asked to do. Your Honor, I'm obviously her representative. I made that certification. I believe it was made in a declaration of her oath to the court. Yeah, I understand that. And a lawyer may know something that the client doesn't. I mean, the client may know something the lawyer doesn't know. The direction was that the client do it, not the lawyer. The direction was that the client. The employer wanted, CA wanted her to certify that she had returned everything, which I, it took it to mean, and we'll hear this from their appeal, but I took that to mean they also wanted to know what happened to the electronic data that got put on her personal computer. We talk about copies of documents that apparently were made, but there's also the electronic part of it. I made a certification. We made very clear after the case that we gave back basically the only copy we have of the trial exhibits. Right. Okay. But there's also the electronic part that rests on the hard drive in her personal computer. There was a certification that it was all given back. We do not have that. So you took out the hard drive from her personal computer and gave it back to them? I think we gave her the whole computer. I think we just gave it to them. Her personal computer? Yes. You gave it to her, to them? In the crystal, right? Mr. Lederer, I apologize. Whatever. But you can address that on the cross. We don't have any of their data. And that's what really Judge Real was talking about as far as, and, you know, it's moot. Their claim for relief is moot. That was all given back. But, you know. Maybe it wasn't. Maybe it wasn't. We don't have it. I'll state on the record as an officer of this Court, we don't have it. You're saying your client doesn't have it. You're not saying just you don't have it. You're certifying to us that your client does not have any of that material. Boy, that's. She could be lying to me. I doubt it. I've asked her. Exactly. But she doesn't. You know. I was happy to give her the material. You better be careful because it's confusing here because she had both a personal computer. I have a personal computer. And, you know, work assigned computer. My understanding was that data went from the work assigned computer, laptop, to her personal computer, personal laptop. And it's not at all clear what happened to the data on the disk, the disk that's in that laptop. And I didn't understand anything in what I read that she picked up her personal laptop and gave it to Computer Associates. Now, if that's what you're telling us, you better be careful because I don't understand the record. And I read. I was looking for it. I read pretty much everything that you gave me. If the court requires a certification from. I'm not requiring anything. You just. Judge Beezer asked you a question. Right. And you just. I think she testified to it, that she gave everything back. She talks about documents, not the electronic. Right. But I think she actually testified to this, that she gave everything back. And then after the trial was over, I certified everything that we had. Yeah. We gave back. Okay. I agree with that certification. And unless, you know, again, Ms. Heineman is misrepresenting to me, I believe that they haven't. You see, the problem is she so resisted giving up anything on the day she was terminated. She just didn't want them to have it. She wanted all the material. She has gone to work for another competitor, the defendant here. And never has she certified either, as I know it, in open court or in a document that's under oath that says she has disgorged any materials that were generated by her during the course of her employment relating to her employment. Your Honor, and I think I could submit very quickly to the court where it states in the transcript where she was testifying that she, you know, she did not disclose this to anybody but counsel. That's different. And the FBI. That's still different than what I just said. And the reason that she didn't give it, I mean, she was, and that's in the, am I running out of time? Yeah, you're running out of time. I'll give you a minute for rebuttal. So why don't you. All right. Yeah. Or two minutes for rebuttal. Thank you, Your Honor. I can pursue something with you. The stuff that's on those computers is not worth very much anymore, is it? Well, it's, you know, Your Honor, at this point, it may not be worth a lot of money, but I've got a photo of my son in my office. And it's worth a lot to me. It wouldn't be to you.  I would still have a valid claim for conversion. All right. If I might attend to an administrative matter just quickly. Dennis Childs representing Computer Associates. Our plan was for me to address Ms. Heineman's appeal and my colleague, Seth Rapkin. That's fine. To address the company's appeal. That's fine. And we'd like to allocate our time approximately 13 minutes with respect to her. Clock's ticking. Get busy. Okay, I'll do it. Your Honor, this case really presented, Ms. Heineman's case against the company presented a simple either or proposition. Either she was terminated because the company was retaliating against her for having filed a complaint with the government, or she was terminated because she submitted a forged contract. There were never multiple justifications or rationales advanced for her defense. There was never any evidence to sustain that kind of claim in the case. The judge admitted all of the evidence that was probative of that issue. They're not complaining. While they complain, they have some evidentiary objections. The heart of this is really the jury instruction. And I'll proceed to the jury instruction, Your Honor. I just wanted to make that point. On an evidentiary basis, he let everything in with respect to that issue. He did some novel things that I don't see happening too often. I'm always surprised every time I try a case, Your Honor. Yes. Well, there were a few novel, you know, I learned something new about how to force a stipulation, but that's beside the point for the moment. What's clear here is, what's critical here are the jury instructions. Okay. I've never quite seen a set of instructions like that before. Well, it's the, you have a situation where Ms. Heineman had multiple claims that were all in essence, not even in essence. That's actually too restrictive a formulation. Every one of her claims was a retaliation claim. Title VII retaliation. Fair Employment and Housing Act retaliation. Common law public policy wrongful termination retaliation. And the one that Mr. Blakely spent time, so much time on, this 1102.5 of the Labor Code. Whistleblower. The whistleblower statute. And what the judge did was try and formulate a single instruction that gave all of the elements that were applicable to all of those claims. I submit. I don't know how you. But I submit. I know. There is a difference, isn't there? I mean, the whistleblower statute is different than the other retaliation claims, correct? California is very generous on that. It is. But it's funny. We all laugh. But then when you actually chart out the requirements of each of these laws, there's almost no substantial difference between them. In pages 18 and 19 of our brief, we walk through what the Fair Employment and Housing Act requires. This is the Judicial Council Instruction 2505. And it requires that there be protected activity, that there be an adverse employment action. She got fired. That the protected activity be a motivating factor for the decision, hence the use of that phrase, that there be harm, and that the adverse employment action be a substantial factor in causing that harm. That is, in essence, the instruction that this Court gave. That is not a misstatement of the requirements. But, you know, it goes on. It says to recover a retaliation termination claim, this kind of must prove that her employment was terminated because. So there's a disconnect. Your Honor, I think what the judge did was he simply tried to explain what the elements meant in this case. As long as the instructions fairly and adequately cover the issues presented, the exact formulations of the instruction is a matter of discretion. And what the Court was trying to do was explain in the context of this evidence, and we've cited the many Ninth Circuit decisions that describe how when an instruction is evidentially driven like these, like mixed motive, the circumstance we have here, whether the employer is going to present an affirmative defense. The judge, the determinations that the judge makes as to how to formulate those instructions are reviewed from an abuse of discretion. And what I think the judge was trying to accomplish in his. Roberts. Could you help him in this endeavor? Well, certainly we did. But ultimately, the judge, the instruction that was given was an instruction that the district court developed after looking at what Ms. Heineman had presented, selecting some of what she produced, and what we had presented, selecting some of it and rejecting other pieces of it. In my view, the Court was trying to explain if, if the complaints of Ms. Heineman played a role, any role whatsoever, a motivating factor, she has to prevail. That's what the judge instructed. If, on the other hand, she were discharged for a reason other than those complaints, in other words, they didn't play a role, then the company prevails. The fundamental proposition that all Ms. Heineman had to prove. Who had the burden on that last point? I don't think he was allocating the burden as between either party. Does that make a difference? No, I don't think it does at all. Why not? Because the Court is allowed to deliver explanations of the basic elements of the cause of action that help the jury to understand how to evaluate evidence. That's one of the subsidiary instructions. If I may give you an example, Your Honor, the instruction that talks about how circumstantial evidence can be used is an example of exactly that. A jury can draw inferences or conclusions from circumstantial evidence. It's explaining that in looking at the elements that a claimant must prove, what the jury can or should consider. It's not an abuse of discretion to deliver an explanation of what has happened as far as how the evidence can be evaluated by the jurors in their deliberations. And here, if I might, Your Honor, on the whole mixed motive and shifting burdens, first of all, it's obvious and clear, it's established under the Costa case, Gal It's also clear on this evidentiary record that there was no basis to give the affirmative defense piece of the mixed motive instruction, because this company was not asking the Court for a second chance. This defendant was content. Maybe it was a good decision. So it was either or. I'm sorry, Your Honor? An either-or situation. Exactly. I mean, it's in an odd way what the plaintiff – I'm saying that. I'm not saying that well. I don't mean it's odd as in different or difficult. It's just very strange. What we – at heart, what we have here is a plaintiff who lost a jury trial in which there was overwhelming evidence to show that she forged and submitted a forged sales contract. I won't bore the Court by going through all that again. It was made very clear in our brief. She lost a jury verdict, and she is now complaining with respect to the instructions. Well, there should have been a section in this instruction where the employer was given an opportunity to prevail even after I showed that retaliation was a motivating factor. However, the only entity in this case that could benefit from the instructions that Laura Heinemann proposed and now makes the basis for her appeal was C.A. It was C.A. that lost the second part of the mixed motive instruction. Nor do I think there's anything wrong in this case under the abuse of discretion standard, and given the binary or either or proposition that was being discussed, that there was nothing wrong with the Court to present that consistent with the evidence for the jury to decide. There was no claim that something else influenced them. There was no claim that her prior performance influenced the decision. It was all based on this discrete event, a serious act of misconduct that occurred after she had made her claims to the government. Hence, the temporal proximity instruction really had no role here. And those cases really are quite clear, Your Honors. That applies to the prima facie case, which is determined at summary judgment and earlier procedural stages and drops out of the analysis, excuse me, when we are considering an actual trial. Let me ask one question. After the judge formulated these instructions that he gave, this instruction that he gave, did C.A. object at all to the formulation? Did C.A. object to the formulation? Yeah. Did C.A., the way he drafted this, so you said a minute ago he took the plaintiff's instructions, he took your instructions, looked at them, put them all together and formulated this instruction that he gave, this composite instruction. I'm just curious. Did C.A. object to this formulation at all? We did not object to that formulation. You thought it was pretty good. I thought that it fairly stated the elements that were required of her and explained how the jury should apply those in this case with respect to consideration of points of evidence. You know, it's a great question because you really put me on the spot, Your Honor. I'm never satisfied. You know how lawyers are. I always think the instruction could have been better and should have been more favorable. We did propose our own separate set of instructions, which were rejected by the Court. Did we, for instance, if I were up here on appeal now, I could not tell you that I, I could not honestly tell you, yeah, we preserved our error. We didn't stand up and say, no, Your Honor, this is obviously wrong and you're making a mistake to instruct the jury in that way. We did not. And I actually do think they were pretty good. In fact, I think they were absolutely accurate in delivering the points that the plaintiff was required to prove in order to win a case of retaliation. And they accurately explained what the law is. We can always, we can always quibble with exactly how jury instructions are formulated, but the issue on appeal is whether, viewing the instructions as a whole, the Court gave adequate instructions to ensure the jury understood the issues. In that regard, I know I sound like a broken record here, Your Honor, but I think it's really important. No, I understand. We understand what you're saying. No, and I realize that. I'm not, I don't mean to be recriminatory. My point is this. When you sit through the trial and you see all the evidence focused on this one either proposition, it's much more dramatically obvious that the instructions need simply to address that proposition in a straightforward, simple way so that the jury can do its work. Are there any other issues you want to address before you? No. I think at this point I would defer to my colleague, Mr. Rafton, with respect to CA's appeal. Can I look here? Good morning. May it please the Court. Seth Rafton for Computer Associates. With respect to the company's appeal, with respect to its claims for conversion and breach of contract, the record at ER 49, that is a portion of Ms. Heinemann's opposition to the request for judgment in favor of CA on those claims, states at lines 11 through 17 that Heinemann gave the laptop to the FBI in 2003. It was given back to CA in March of 2004. So we know that the CA laptop, and we do not dispute, the CA laptop was returned to CA eventually in the course of this litigation. We also know a few pages later at ER 52 from the October 18, 2007, post-verdict letter from Mr. Blakely to Mr. Child, it states, quote, accompanying this letter are all of our copies of the disputed CA documents in which we had in our possession custody and control. So we know that the documents or copies it's been represented that were in the possession of Ms. Heinemann's counsel have also been returned. But as this court's questioning displayed, there is a third tranche of information here, and that is precisely the information Your Honor alluded to. It's the copy that she testified to at her deposition and again at trial that she made of the information that was on the CA-issued laptop. She made a copy of that electronically and put it at least on one personal laptop. We don't know whether she made more or not. She has worked for not one but two competitors since leaving CA, Allen Systems Group and IBM. And to this day, what we have requested is that she certify under oath that she's returned all copies, to return all copies and certify that she has or certify that all copies have been returned. And to this day, she has refused to do that. We need to use the word copies. You're not only referring to paper copies. That's right. You're referring to electronic copies. Is that right? That's exactly right. Any copies, whatever. Now, counsel said here he thought that maybe she had returned or she gave her personal computer to CA. That is not the case. And that's why I pointed the court to page 49 of their brief where they say they gave the laptop to the FBI in 2003. It was given back to CA in March 2004. Her testimony at trial was she gave the, her CA laptop to the government. She also gave her, I understood it to read when I read it again that she gave both her personal computer and the CA computer to the government. I don't, I didn't read it that way. What I know and this is why I point out the two things we do know is that the CA laptop was returned to CA in the course of this litigation and that Heineman's counsel's never been a certification from Ms. Heineman that the other copy or copies, whether electronic or hard copy, have been returned. And that is what it all. Yeah. The district court didn't make any findings on the, you know, kind of summarily just said, well, move. Get her back. You got, what's the beef, you know? It's been many years. This is all in history. She didn't give it, she didn't turn it over to anybody. And she made, he made, he technically made no findings under Rule 52. Is that right? 52. And that's what I was going to conclude with is the colloquy that you're pointing to was a pretrial, before any evidence was submitted, a pretrial comment of the judge about damages. They brought a motion about, in limine about damages. As the court knows, we were seeking at that point only injunctive relief to just simply get the data back. Well, on that point, what is the harm that would be suffered by CA if you don't get it back? In order to get an injunction, you have to prove there's no plain speed or adequate remedy at law, so you have to have the wool sack and equity. I think the harm is we have an individual in possession of what's undisputedly confidential information of the company. And it's important sales data, et cetera, that would be valuable to a competitor. The harm is then if we do not prevail, she really has a judicial imprimatur that she can do whatever she wants with that. To pick up on Mr. Child's analogy about, you know, if someone takes a picture from your chambers, that may be really valuable to you. I don't think the law requires that you wait until the person who took it pawns it and misuses it. Okay. I take your point. Now, my other question is, did you ever ask the district judge? I know in this particular case that that might be a difficult thing to do, but did you ever ask him to reconsider on this point, denying an injunctive? We did not file a motion for reconsideration. Well, then do you really have a case here in this Court to assign error on that? He didn't make a decision. This is all in his pretrial conference. No, he issued a judgment that said that CA will take nothing on its claims. He issued a final judgment. Did he cover that in the judgment? Did he cover what? He covered your injunction. Computer return. Yes. He said that he'll take nothing. So I don't believe we were required. So you didn't have to. Yeah, you didn't have to. But when she was on the stand, it wasn't clearly established, as I recall, what really happened to her personal computer and the information on her personal computer. I think that's right. I mean, in the sense that we don't know whether she printed that out, whether she put it onto another device. Or whether she just erased it. True. But she had an opportunity at her deposition to say that, at trial to say that, and at any time in this proceeding. Well, you had the opportunity to cross-examine her about it. And we did. I'm sorry to interrupt. We did. And what we asked her on cross-examination was we established that she did, in fact, make a copy of it. And she said yes. And she never said that. As I understand it, she took her personal computer to the C.A. Tech people. And the C.A. Tech people copied from her work computer to her personal computer so she could do her job. That's what she tested. Right. But I think. It's not as if she went and did it. She was working at the time, and she needed the information. And we have not made it. We have not taken issue with the fact that she made the copy, you know, during her employment. But the contract says at the end of your employment, you have to return all copies of it. And it's written that way purposefully so that we don't get into a debate about whether it resides only on this particular disk versus another. To conclude with the Rule 52a issue, I would urge the Court. I mean, I think at a minimum, it would have to go back to get an explanation from the district court as to its reasoning. But I think this Court's decision in Simonoff makes clear that when the court from there really isn't anything in dispute here, that there could be some discussion about the affirmative defenses, Heinemann advance. But I think those were dealt with squarely in the briefs, and there's just nothing there. If this Court agrees with that proposition and this Court agrees, then I think this Court can decide to remand with a directive to issue the injunction. And I would urge the Court to consider that. What if she erased? What if it turns out that she erased all the information off of her personal computer? Then part of the prayer that we asked for in terms of the injunctive relief was that the documents are returned with her certification under oath. If that's the case, Your Honor, she can provide that certification, but that would be important for the company to know that, for her to actually have to say under oath, yes, I've gotten rid of it all, so that if something happened down the road, that's obviously, you know, it helps the company at the present, but also would help the company down the road. Thank you very much. I'm just going to follow right up on what was just being discussed. And, again, if what they want is a certification, we'll give that to them and file it with the Court. I understand that that is something that was not discussed when, you know, we filed our document or declaration after the trial, but if that's what they want, they can get that. Your Honors also need to remember that they used to have a trade secret claim, and this Court already dismissed and upheld the dismissal of that claim, holding that they couldn't prove damages, exactly what they couldn't prove at trial with regard to the other claims. They can't, they can't, they never have proved how they were somehow damaged by this information. And also, another point, they sort of hung themselves with regard to that stipulation that was forced on our throat by admitting to these SEC violations, because that was the basis for our equitable, you know, unclean hands, our illegality defense, our civil procedure 47 section defense also. By admitting to that, it basically, they were out on those defenses also. And very quickly, with regard to the instructions itself, it is, it's a de novo review. When the Court misstates the law, it's a de novo review. And that's exactly what the Court did here. As we went through the elements, and it's in the California instructions and in the statute. For instance, Elissa Ballora's claim has three elements. It doesn't have all of these non-retaliatory elements, this language, this because of language, all of these different elements. But the problem with that argument and the way you framed it in your brief is that those are just model instructions. And ultimately, you have to look to determine whether or not the instructions violate or inconsistent with the legal standards set forth in the statute or in case law. And I think it's particularly highlighted with regard to the Elissa Ballora claim. Because to add these elements, which are the non-retaliatory basically defense elements, without talking about the appropriate standard, they have, I mean, they want to have their cake and eat it, too. They want to have that defense, but not appropriately allocate the proper burden of proof. So I think it's a little disingenuous to say that, well, it's either, they are arguing a pseudo, I mean, that's a non-retaliatory reason language at the bottom of the jury instruction that was given. And that was given. And again, I also think it's completely improper to, as Your Honor pointed out, it's rather novel, and there's a reason it's rather novel, to lump in all of these elements that are applicable to some claims, not applicable to others, and some elements that aren't applicable to any of the claims into a catch-all jury instruction that was obviously slanted against Heinemann. I mean, I argued 10 pages on the transcript I looked at was my objection. And I think we filed a 25-page brief about our objections. I mean, it was, and I think it's very clear and very obvious what was going on at trial. And it's obvious from the record as well, because I was having that experience with it before I was prepared for it. Okay. Thank you, Your Honor. Thank you. We appreciate counsel's arguments. The matter is submitted. Okay. Our last case for argument is Callas v. Holder.
judges: Goodwin, Beezer, Paez